**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDRA GULKO-HYMAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 17-11468 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Alexandra Gulko-Hyman's appeal for judicial review of a final decision issued on behalf of the Commissioner of the Social Security Administration ("Commissioner"), who denied her claim for disability insurance benefits. (ECF No. 1). After careful consideration of the administrative record, submissions made in support of, (ECF Nos. 7, 10), and in opposition to, (ECF No. 9), the instant appeal, the Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court affirms the decision of the Commissioner.

## I. BACKGROUND[1]

On July 15, 2013, Plaintiff filed applications for both child's insurance benefits ("CIB") and supplemental social security income ("SSI") based on her Autism Spectrum Disorder/Asperger's beginning on March 15, 1998. (R. at 13). The claims were denied at the

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 4 through 4-10.

initial level on January 17, 2014, and again at the reconsideration level on April 28, 2014. (R. at 13). Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (R. at 13). On June 20, 2016, Plaintiff testified at a hearing before ALJ Michael S. Hertzig. (R. at 13).

On August 18, 2016, the ALJ issued a decision denying Plaintiff's request for CIB and SSI. (R. at 10). The ALJ conducted the sequential five-step analysis. At step one, the ALJ found that Plaintiff, born on March 15, 1995, had not reached the age of 22 at the alleged onset date of the disability—March 15, 1998—and had not engaged in substantial gainful activity since March 15, 1998. (R. at 15). At step two, the ALJ found that Plaintiff's Autism Spectrum Disorder/Asperger's constituted a "severe impairment." (R. at 16). However, the ALJ determined that this impairment did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17). At step four, the ALJ determined that Plaintiff "has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she may have only occasional interaction with coworkers, supervisors, and the general public." (R. at 19). Finally, the ALJ concluded at step five that there are a significant number of jobs that exist in the national economy that Plaintiff could perform, and thus denied Plaintiff's applications for CIB and SSI. (R. at 26–27). On October 24, 2016, Plaintiff appealed the ALJ's decision, (R. at 7), which the Appeals Council denied on October 23, 2017. (R. at 2). Plaintiff now appeals the final decision of the Commissioner challenging the ALJ's conclusions at steps three, four, and five. For the reasons set forth below, the decision of the Commissioner is affirmed.

## II.   STANDARD OF REVIEW

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. ANALYSIS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.1520. At step one, an administrative law judge assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. § 416.1520(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. *Id.* If not, the administrative law judge proceeds to step two and determines whether the claimant has a

"severe" physical or mental impairment or combination of impairments. 20 C.F.R. § 416.1520(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such an impairment, an administrative law judge proceeds to step three. *Id.* At step three, an administrative law judge evaluates whether the claimant's severe impairment either meets or is the equivalent of a listed impairment. 20 C.F.R. § 416.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, an administrative law judge moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

When determining RFC, an "ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679 (3d Cir. 2015) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant

numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.*

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987)). The Commissioner bears the burden of proof for the final step. *See id.* at 263.

### A.   Step Three: Listed Impairments

Plaintiff argues that the ALJ erred at step three in finding that Plaintiff failed to meet the criteria for Listing 12.10. (ECF No. 7 at 12–18). To meet the requirements for Listing 12.10, Plaintiff must establish:

> A. Medically documented findings of the following:
>
> 1. For autistic disorder, all of the following:
>
> a. Qualitative deficits in reciprocal social interaction; and
>
> b. Qualitative deficits in verbal and nonverbal communication and in imaginative activity; and
>
> c. Markedly restricted repertoire of activities and interests; . . .
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or.

      3. Marked difficulties in maintaining concentration, persistence, or pace; or

      4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., pt. 404, subpt. P, app. 1, § 12.10 (2016).

    Plaintiff argues that the "Administrative Law Judge distorted the testimony of [Plaintiff] and the evidence of [the] record to reach a conclusion that is not supported by the record." (ECF No. 7 at 13). Plaintiff disagrees with the ALJ's conclusion that Plaintiff did not have at least two marked impairments and that she, in fact, "manages to lead the life of a fairly normal college student." (ECF No. 7 at 16 (quoting R. at 25)).

    In coming to his conclusion that Plaintiff does not meet or medically equal Listing 12.10, the ALJ assessed Plaintiff's living situation in college, her social involvement on campus, her class participation and grades, and her high school teachers' evaluations. (R. at 17–18). The ALJ then determined that Plaintiff did not satisfy any of the paragraph B requirements. (R. at 18).

    While Plaintiff's father testified that she is not capable of taking care of herself, Plaintiff lived alone in college without obvious support and preferred to do so, attended her classes, and got good grades. (R. at 18, 50). Plaintiff testified that she socializes at college and is liked, though she does not know if she would consider her peers "friends." (R. at 50). Additionally, Plaintiff would occasionally stay in her room and miss meals, and preferred to stay in her room and study, rather than attend college parties. (R. at 18). Based on this analysis, the ALJ concluded that Plaintiff had no restrictions on activities of daily living, had experienced no episodes of decompensation of extended duration, and had mild difficulties in social functioning. (R. at 18). Thus, the Court finds that the ALJ weighed the evidence available to him and based his decision at step three on substantial evidence.

That the ALJ assigned little weight to the opinions of Dr. Lewis Lazarus and Susan Passera does not alter the Court's analysis. The ALJ fully considered the opinions of Ms. Passera, a social worker, and Dr. Lazarus. (R. at 24–25). He assigned little weight to the opinion of Dr. Lazarus, because Dr. Lazarus examined Plaintiff only once, he did not appear to have reviewed Plaintiff's medical record or perform any independent testing, and he relied solely on the statements of Plaintiff and her father. (R. at 24–25). The ALJ may reject a medical opinion, including a treating physician's opinion, where it "conflicts with other medical evidence," and an "ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2) (explaining that the Commissioner gives a medical opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").

As for Ms. Passera's opinion, the ALJ afforded it no weight as a medical opinion because she is not a proper medical source under the Commissioner's regulations. (R. at 25); SSR 06-03p. The ALJ also assigned Ms. Passera's opinion little weight as a lay opinion, because it was supported by "very little evidence dating after 2014," Plaintiff "no longer sees Ms. Passera, except in friendship," Ms. Passera "did not provide any chart notes from treatment at any time," and because the objective record does "not reveal an inordinate or rigid set of routines," that have "precluded her success as an away-from-home college student." (R. at 25). The ALJ took into account most of the record in coming to these conclusions, and thus, his decisions were supported by substantial evidence. *See Hartranft*, 181 F.3d at 360 ("We will not set the Commissioner's

decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

**B. RFC**

Plaintiff contests the ALJ's RFC determination for the same reasons she contests his findings at step three. Plaintiff argues that the ALJ's finding that her RFC is "limited only to the extent that she can tolerate only occasional interaction with others . . . is a gross minimalization of her actual restrictions as demonstrated by the weight of the evidence discussed above." (ECF No. 7 at 20).

The ALJ's RFC analysis makes clear that he considered the full scope of the record and further establishes that his decisions at steps three and four are supported by substantial evidence. The ALJ dedicated seven single-spaced pages to his analysis of Plaintiff's RFC. (R. at 19–26). In those pages, the ALJ covered the spectrum of evidence available to him relating to Plaintiff's disability. The ALJ discussed Plaintiff's academic achievements and struggles throughout high school and college, her social life in both high school and college, her desire to go to law school and the fact that she took the LSAT without accommodations, her inability to pass the visual or written driver's license exams, her summer employment checking beach tags and cleaning tennis courts for the City of Longport, her interpersonal relationships, and her outside interests such as foreign music and anime. (R. at 19–20).

The ALJ went into substantial detail in these discussions, and did not focus solely on what came easily to Plaintiff. The ALJ noted that Plaintiff has a relationship with a social worker whom she saw two three times per week in high school, but now just calls "when bad things happen," because she feels like she has no one else to talk to. (R. at 19–20). Plaintiff also refuses to see a psychiatrist despite that being recommended to her, because "she is not interested or comfortable

with others." (R. at 20). The ALJ also discussed Plaintiff's freshman year roommate situation, and the reasons why she ended up living alone, along with some of her more isolating tendencies, such as her self-described "OCD issues," her displeasure with the amount of people in her neighborhood over the summer, her preference for self-checkout at stores, and her desire to stay home and read books "all the time." (R. at 20). The ALJ then recounted Plaintiff's medical and academic history, starting in 2003, chronicling the testing, examinations, and school reports that documented Plaintiff's early struggles, eventual diagnosis of, and subsequent life with her disability. (R. at 20–23). After considering all of this evidence, the ALJ concluded that while "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms," Plaintiff's claims of the intensity and limiting effects of those symptoms did not match the evidence in the record, and as such Plaintiff "has little in the way of functional limitations." (R. at 23). The ALJ took significant time to assess the evidence before him, and because his conclusion regarding Plaintiff's RFC is supported by substantial evidence, the Court must affirm that finding. *Williams*, 970 F.2d at 1182.

### C. Step Five

Plaintiff challenges the ALJ's findings at step five on the grounds that, because she believes the ALJ's RFC determination is not sustainable, the testimony of the vocational expert as to the jobs that Plaintiff could engage in is also unsupported by substantial evidence. (ECF No. 7 at 21). As the Court has already found that the ALJ's RFC determination was supported by substantial evidence, the testimony of the vocational expert as to the jobs available to Plaintiff in the national economy may properly be considered substantial evidence. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). Plaintiff asks that the Court rely on the testimony of the vocational expert that there would be no jobs in the national economy available to Plaintiff if we were dealing with

"an individual who could have no contact at all in a normal workday with the general public [or] with coworkers," (R. at 56–57), however, as discussed above, there is substantial evidence in the record supporting the ALJ's conclusion that Plaintiff could interact occasionally with coworkers, supervisors, and the general public. When asked that question, the vocational expert listed several examples of jobs widely available in the national economy, including that of janitor or cleaner, maid or housekeeper, and inspectors, testers, or sorters. (R. at 55).

## IV.   CONCLUSION

For the reasons stated above, the Court affirms the decision of the Commissioner. An appropriate Order accompanies this Opinion.

DATED: December 10th, 2018

JOSE L. LINARES
Chief Judge, United States District Court